■ In the Matter of the Claim of GLORIA GLAZE, Appellant, v VILLA MANUFACTURING et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workmen's Compensation Board, filed April 3, 1975, which denied death benefits upon the ground that the decedent was an independent contractor. The question presented upon this appeal is whether or not there is substantial evidence to support the board's finding that the deceased employee was an independent contractor. In this regard, the board made its finding based upon the "credible evidence". The record establishes that the alleged employer (hereinafter employer) had contracted with the owner of certain premises to install kitchens in apartments under construction at an installed price. The employer

manufactured kitchen cabinets and materials and about two years before the accident it had established a policy of subcontracting the installation of such materials where they had agreed to provide both materials and installation. However, they also have some men employed as installers on their payroll. A vice-president of the employer testified that the decedent was not an employee. However, it is readily established that he was not the one who engaged the decedent's services and that he had no personal knowledge of the contractual relationship. The record establishes that the claimant's decedent intended to become self-employed as a kitchen or cabinet installer. It is also established that immediately before the relationship with the employer was entered into, the decedent was not self-employed. The employer's field supervisor (also sales representative and estimator) testified that he engaged the services of the decedent on behalf of the employer. The decedent commenced work about 10 days prior to his death on February 16, 1972, pursuant to his oral arrangement with the supervisor. The supervisor's description of the hiring arrangement is as follows: "I said, how much do you want to install cabinets, because with contractors as opposed to hourly people they have various means of arriving at the cost to us of installation based on the number of cabinets laid out, et cetera. He said he didn't know how much he should charge * * *. I realized the man had a family, he had to have so much money. So, I said, well, what you have to do is, you have to tell me that, I want twenty, fifteen, thirty dollars to put in 'X' number of cabinets which prepares a complete unit. Then, you bill us on that basis. He said, I don't know what to charge, what do I do? And, I said, well, that was the only way that we could accept it. And he said, well, I got to have $170, $175 a week anyway, to take home. And he said, do you think that I would be worth that in a week's time? And I said, well, I saw it seemed fair to me. What you should do is you give me—you bill us for the work you did for what you feel that you accomplished. After I check it if it is worth $170, $175, I will okay it and pay you that amount and he said, I would like to do this because I don't know what to charge." It is apparent that the decedent did not submit any bid for any particular work. Furthermore, the supervisor admitted that the decedent was inexperienced as an installer and both the supervisor and an admitted employee of the employer in their testimony established control over the decedent as to his manner and method of doing the work. On the Monday following the first week of work, the decedent and the supervisor had a conversation to which the supervisor testified as follows: "Well, the only thing I can think of is that he was quite excited, I would say, with how things were going for him. He really liked the work. He told me he talked to Gordon Hoag and he was anxious to go on his own. That he felt that he could do it and he asked me what I thought and I said I could see no—that you would have no problem in cabinet installation. And, he said, well, what he would like to do then is to start billing me on the unit basis because he felt now that he could, that he knew what he was doing enough. I said, fine." This conversation might be construed as changing the master-servant relationship to independent contractor, but the record is devoid of any agreement between the parties as to unit prices and the employer's vice-president testified that for the three days of the second week which decedent worked he was not paid on a unit basis. While the record establishes that the decedent furnished his own tools and transportation and was expected to become self-employed, the record is devoid of any substantial evidence, credible or otherwise, to support the board's findings that the decedent was not an employee and was an independent contractor. The requirement of the employer that the decedent furnish

a certificate of coverage for workmen's compensation is of no probative value in a case such as the present one where the question is limited to the control over the decedent and there is no substantial evidence that he was in charge of anything other than personally performing labor for a weekly salary or to otherwise raise a factual issue as to the nature of the employment. The board did not pass on the question of whether or not there had been a causal connection between the employment and the death. Decision reversed, with costs to claimant against the employer and its insurance carrier, and matter remitted to the Workmen's Compensation Board for further proceedings not inconsistent herewith. Koreman, P. J., Greenblott, Mahoney, Main and Herlihy, JJ., concur.